UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID VINCENT CARSON,<br><br>Petitioner,<br><br>v.<br><br>D.G. ADAMS, Warden,<br><br>Respondent. | NO. CV 09-9194-CAS (AGR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the petition, records on file, and the Report and Recommendation of the magistrate judge. Further, the Court has engaged in a *de novo* review of those portions of the Report to which Petitioner has objected. The Court accepts the findings and recommendation of the magistrate judge.

In the first section of his objections, Petitioner lists 15 points in which he disputes portions of the Report. (Objections at 2-5.)

Many findings challenged as erroneous by Petitioner are not findings made by the magistrate judge but by the California Court of Appeal. (*See* Objections, Item Nos. 1, 2, 4, 5, 7, 8, 10, and 15.) The magistrate judge set forth the statement of facts from the Court of Appeal's opinion but also stated: "To the

extent an evaluation of Petitioner's claims for relief depends on an examination of the record, the court has made an independent evaluation of the record specific to Petitioner's claims for relief." (Report at 3.) Throughout the Report, the magistrate judge extensively cited the record. (*Id.* at 12, 13-15, 15-17, 21-27, 28-29, 30, 34, 34-36, 37-38, 39, 42, 45, and 46.) In general, Petitioner does not explain why the disputed items are material to his grounds. (*See, e.g.,* Objections, Item Nos. 1, 3, 6, 11, 12, and 13.) In many instances, Petitioner's arguments are wrong, immaterial, or both. (*See, e.g., Id.,* Item Nos. 1, 3, 6, 7, 8, 12, and 14.)

In Item No. 1, Petitioner argues that page 4 of the Report states that Rodriguez's (the murder victim) apartment is on Otsego. (Objections at 2.) This is a finding by the Court of Appeal. Petitioner states that Rodriguez's apartment was actually at 12249 Oxnard Street. (*Id.*) To the extent Petitioner interprets the relevant sentence from the Court of Appeal's decision correctly, Petitioner is right. (*See* Lodged Document ("LD") 23 at 2110.) However, Petitioner does not explain how the alleged error by the Court of Appeal is material to any of his claims. Nor does the Report rely on the incorrect address for any of its reasoning.

In Item No. 3, Petitioner objects to page 22 of the Report. (Objections at 2.) He argues that O'Donnell, a witness who found Rodriguez's body and called 911, did not call the fire department and the fire department did not arrive within five minutes of her call. (*Id.*) He also argues that the fire department was not dispatched "after" O'Donnell's call. (*Id.*)

O'Donnell testified she saw Rodriguez slumped over the wheel of his car and then called 911. She did not say when she called. (LD 23 at 940.) Petitioner says she could not have called the fire department at 11:41 p.m. (Objections at 2.)[1] Petitioner's argument that O'Donnell did not call the fire

---

[1] Petitioner is apparently referring to the Court of Appeal's statement at page 4 of the Report that the call was "probably made around 11:41 p.m."

2

department (as opposed to 911) at 11:41 p.m. is correct. However, the Report does not say she did. O'Donnell testified she did not know "who called the fire department." (LD 23 at 944.) O'Donnell did not say the fire department was dispatched at 11:43; Daniel Thompson, a fire department official testified to that fact. (LD 23 at 1025.) Petitioner argues the fire department had to have arrived "approximately 1-1.5 minutes into [O'Donnell's] call," not "afterwards." (Objections at 2.) Petitioner does not identify how his allegations are material.

In Items Nos. 5 and 6, Petitioner claims the statements in the Report by the Court of Appeal (Report at 5) and by the magistrate judge (*id.* at 22) are incorrect. (Objections at 2-3.) Specifically, he states that the two calls made from Petitioner's phone on September 10, 1999 (the date the victim, Rodriguez, was murdered), one at 11:06 p.m. (23:06) and the other at 11:32:22 p.m. (23:32) were not the only calls made from Petitioner's phone that evening and additional calls were made from Petitioner's phone after Rodriguez's death. (*Id.* (citing Petition, Ex. FF).) Ex. FF indicates that two *earlier* calls were made from Petitioner's phone at 21:48 and 22:33 p.m. However, Petitioner's ultimate point that phone calls were made from his phone *after* Rodriguez's death is unsupported. According to the testimony, Rodriguez was already dead by 11:41 p.m. when O'Donnell saw him slumped over the steering wheel. Even the two calls cited by the Report occurred before that time, the latest between 11:32 and 11:33 p.m. The calls not mentioned in the Report occurred at 9:48 and 10:33 p.m., well before Rodriguez died. Based on the record, the Court of Appeal is correct that none of the calls occurred after the time of Rodriguez's murder. (Report at 5.)

In Item No. 7, Petitioner's objections involve discrepancies between Detective Bancroft's testimony at the preliminary hearing, Petitioner's first trial, and his second trial, which is the one at issue. (Objections at 3-4.) The discrepancies were brought out by defense counsel at the second trial. Petitioner's conclusion that Bancroft did not know the radius of cell phone tower

3

1  #39 is contradicted by Petitioner's own recital of Bancroft's testimony. (*Id.*)
2  Bancroft stated he did not know whether the maximum radius of the tower was a
3  mile or a mile and a half but that it was somewhere in between the two. He then
4  answered a *hypothetical* based on the radius being a mile. During cross,
5  Bancroft said that the reason he said it was a mile, rather than a mile and a half in
6  earlier testimony, was because since that time, "I've learned differently." (LD 23
7  at 2175.) All of Bancroft's testimony was heard by the jury whose province was
8  to evaluate Bancroft's credibility.

9  Petitioner argues that the Report is wrong when it says Petitioner had to be
10 within one and a half miles of 2600 Laurel Canyon. (Objections at 4.) However,
11 it was not the magistrate judge who made that finding, but the Court of Appeal.
12 (Report at 5.) Moreover, in an extension of this argument, in Item No. 8 Petitioner
13 argues that the Report is wrong when it says it took Bancroft 9 minutes to drive
14 from 2600 Laurel Canyon to the murder scene. (Objections at 4 & Ex. 1); Report
15 at 23 (citing to LD 23 at 2139).) The time of 14 minutes, 34 seconds cited by
16 Petitioner is the time it took Bancroft to travel from the murder scene at Otsego
17 and Bellingham to the cell phone tower, which, according to Bancroft, was
18 located at 8228 Sunset Boulevard. (LD 23 at 2418-19.) Moreover, the 9-minute
19 drive cited by Petitioner occurred at around 11:30 p.m. (LD 23 at 2139), close to
20 the same time of day that Rodriguez was killed, whereas the 14 minute time
21 frame was at 10:42 a.m. (*id.* at 2419).[2] In addition, the 9-minute travel time was
22 from 2600 Laurel Canyon Boulevard to the murder scene (*id.* at 2139), not from
23 the murder scene to the cell phone tower (*id.* at 2418-19).[3]

---

[2] Indeed, the document attached as Ex. 1 to the Objections states that the driving time was during "heavy traffic."

[3] According to Bancroft, the cell phone tower itself was on Sunset Boulevard at the intersection of Harper. (LD 23 at 2418.) 2600 Laurel Canyon Boulevard is approximately 1.9 miles north of the tower. *See* Google Maps, Directions between 8228 Sunset and 2600 Laurel Canyon. The crime scene is

4

In Item No. 12, Petitioner objects to the Report's statement that a police form dated October 27, 1999, "does not indicate that no property was taken." (Objections at 5 (citing Petition, Ex. I; Report at 18.)) The Report's statement is correct. Petitioner cites to an earlier preliminary police report dated August and September 1999 in which the boxes for property taken and/or stolen have lines through them. Petitioner interprets those lines to mean "none." (Objections at 5.) There is no support for Petitioner's interpretation of what the boxes signify; nor does Petitioner identify how his allegations are material to any ground.

Petitioner's remaining objections have no merit.

IT IS ORDERED that judgment be entered denying the petition and dismissing this action with prejudice.

DATED: January 14, 2013

*Christina A. Snyder*

CHRISTINA A. SNYDER
United States District Judge

---

further north of 2600 Laurel Canyon. "Courts have generally taken judicial notice of facts gleaned from internet mapping tools such as Google Maps or Mapquest." *United States v. Brown*, 636 F. Supp. 2d 1116, 1124 n.1 (D. Nev. 2009) (collecting cases); *see also Rindfleisch v. Gentiva Health Systems, Inc.*, 752 F. Supp. 2d 246, 259 n.13 (E.D.N.Y. 2010) (same); *see also Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1219 n.2 (10th Cir. 2007) (taking judicial notice of a distance between two geographical points based on a website).

5